# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

VICTOR TORRES-MEJIA,

                        Petitioner,

v.

JERRY HOWELL,[1] *et al.*,

                       Respondents.

Case No. 2:18-cv-00681-RFB-VCF

**ORDER**

Petitioner Victor Torres-Mejia, who pleaded guilty to two counts of trafficking a controlled substance and was sentenced to two concurrent sentences of 10 to 25 years, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF Nos. 15; 17-7.) This matter is before this Court for adjudication of the merits of Torres-Mejia's petition, which alleges that the state district court violated his right to counsel of his choice, his counsel failed to move to suppress evidence found in his vehicle and to convey to him that the plea offer had an expiration date, and his guilty plea was not knowingly, voluntarily, and intelligently made. (ECF No. 15.) For the reasons discussed below, the Court grants the petition.

## I. BACKGROUND[2]

On September 22, 2011, a peace officer with the City of North Las Vegas Police Department initiated a traffic stop of Torres-Mejia's vehicle, which was registered to someone other than Torres-Mejia, "at approximately 1057 hours" for "blocking the cross walk for

---

[1]     The state corrections department's website indicates Torres-Mejia is on parole. Should there be any further proceedings in this federal matter, the parties should substitute a proper current respondent in the place of Jerry Howell.

[2]     The Court makes no credibility findings or other factual findings regarding the truth or falsity of the evidence from the state court. This Court's summary is merely a backdrop to its consideration of the issues presented in the case.

pedestrians" at a traffic signal. (ECF Nos. 16-1 at 3; 16-9 at 4, 9.) After being asked for his driver's license, insurance, and registration, Torres-Mejia, who was thirty-eight years old, gave the officer "a Mexican identification card." (ECF Nos. 16-1 at 2; 16-9 at 4.) The officer spoke with Torres-Mejia in English, and Torres-Mejia appeared to understand what the officer was saying because "his actions [were] appropriate for the questions that [the officer] asked him in English." (ECF No. 16-9 at 4.)

While speaking with Torres-Mejia, the officer "saw his hands were shaking and could see the pulse in his neck." (ECF Nos. 16-1 at 3.) The officer also smelled an odor from the vehicle, which he recognized as heroin. (ECF No. 16-9 at 5.) The officer returned to his vehicle, and after another officer arrived as backup, the officer returned to Torres-Mejia's vehicle, asked him to step out of the vehicle, and advised Torres-Mejia that he was giving "him a verbal warning on the traffic violation." (Id.) The officer then asked Torres-Mejia for permission to search the vehicle, and Torres-Mejia verbally agreed. (ECF No. 16-1 at 3.) The officer asked Torres-Mejia "to read a consent to search form that [was] written in both English and Spanish," and the officer "watched as [Torres-Mejia] read the paper," indicating that Torres-Mejia "had his finger on the Spanish version and moved his finger along the lines as he read." (ECF No. 16-2 at 2.) Torres-Mejia signed the consent to search form. (Id.) The officer then informed Torres-Mejia that he would be using a narcotics canine as a part of the search, and Torres-Mejia "said that was fine." (Id.) The narcotics canine "alerted to the front passenger seat," and the officer "located a modified hidden compartment" containing 200 grams of heroin, 61 grams of cocaine, and money. (ECF No. 16-1 at 3.)

A criminal complaint was filed in the state justice court charging Torres-Mejia with two counts of trafficking a controlled substance. (ECF No. 16-7.) A preliminary hearing was held on

October 13, 2011, and Torres-Mejia was represented by retained counsel, Thomas Ericsson. (ECF No. 16-9.) An information was then filed in the state district court. (ECF No. 16-11.) An arraignment was held on November 2, 2011, and Torres-Mejia pleaded not guilty. (ECF No. 16-12 at 2.) A trial was set for February 6, 2012. (Id.)

Ericsson moved to continue the trial on January 31, 2012, explaining that he had a scheduling conflict. (ECF No. 16-19.) At a calendar call on February 2, 2012, the state district court moved the trial date to April 16, 2012. (ECF No. 16-20 at 5.) On February 13, 2012, Ericsson moved to withdraw as counsel, explaining that "Torres-Mejia and his family ha[d] been unable to raise the funds to [continue to] retain [Ericsson's] firm." (ECF No. 16-21 at 4.) A hearing was held on the motion on February 23, 2012, and the state district court granted the motion and appointed the public defender to represent Torres-Mejia. (ECF No. 16-22.)

On April 9, 2012, Torres-Mejia filed a pro se motion seeking the appointment of alternate counsel. (ECF No. 16-23.) In that motion, Torres-Mejia stated that his appointed counsel, Stephen Immerman, failed to visit him, investigate his case, or "talk to [him] (at any length) as to [his] feelings of being forced into a plea bargain." (Id. at 3.) At a calendar call on April 12, 2012, Immerman explained that Torres-Mejia had been "offered certain negotiations" while he was represented by Ericsson, but Torres-Mejia "elected not to take that negotiation." (ECF No. 16-24 at 4.) Immerman then "succeeded in getting a different negotiation that [was] much more favorable to him." (Id.) Torres-Mejia told the state district court that Immerman "told [him] that [he] had no other option and that [he] had to sign . . . off on the four years." (Id. at 9.) The prosecutor explained that the plea offer made to Ericsson "had been six to 15," but that offer had been lowered when Immerman came on the case "to a four to 15." (Id. at 10.) The prosecutor then explained that the plea offer was "open for another three weeks." (Id.) The state district court denied Torres-Mejia's

3

motion for the appointment of alternate counsel and continued the trial to September 17, 2012, due to the state district court's scheduling conflict. (Id. at 6, 11.) At the conclusion of the hearing, Torres-Mejia asked if he could hire his own counsel, and the state district court stated, "[y]eah. If you find the money and you want the State of Nevada not to pay for it, any time you can substitute him in." (Id. at 11–12.)

At a calendar call on September 13, 2012, the state district court vacated the trial date and set the case for a "status check . . . for negotiations in one month," noting that it would "reset the trial if [the case] doesn't resolve." (ECF No. 16-25 at 4.) The state district court also noted that "Immerman wanted to have another attorney appointed to assist him as far as speaking to [Torres-Mejia] about negotiations," so the state district court appointed Scott Eichorn to the case. (Id. at 4–6.) At a hearing on September 25, 2012, to confirm Eichorn as counsel, the state district court noted that the case "was almost negotiated." (ECF No. 16-26 at 3.)

At a status check hearing on October 18, 2012, Eichorn represented that Torres-Mejia was "still wanting some additional time to consider the offer." (ECF No. 16-27 at 3.) The state district court agreed that an additional week was appropriate. (Id.) A week later, at a hearing on October 25, 2012, Eichorn stated that he was having some issues going over the discovery with Torres-Mejia, and that he was "fairly certain [the prosecutor] can keep [the offer] open until [Eichorn] had the opportunity to do [his] due diligence." (ECF No. 16-28 at 9.) Following a continuance, another status check hearing was held on November 8, 2012, and Eichorn stated that there were still some issues with the discovery being translated into Spanish. (ECF No. 16-29 at 3.) A trial date was set for February 11, 2013, and the prosecutor stated that "the offer expires in two weeks." (Id. at 5–6.) On November 20, 2012, Torres-Mejia wrote a letter to the state district court stating, inter alia, that Eichorn "wants [him] to sing [sic] a deal of 4 to 15 years." (ECF No. 16-30 at 2.)

Torres-Mejia stated that the "offer seems like an abuse" and he felt he was "obligated to sing [sic] an unfair deal." (<u>Id.</u> at 3.)

A hearing was held on December 20, 2012, on the prosecutor's motion to amend the information, and at that hearing, the prosecutor stated that the offer of "four to 15" was extended to "Mr. Immerman, Mr. Eichorn and everyone and the defendant has consistently rejected that offer. [The prosecution] made a drop-dead date which happened a couple of weeks ago." (ECF No. 16-32 at 5.) Eichorn then stated that he "met with [Torres-Mejia] and discussed that as well." (<u>Id.</u> at 6.) The prosecutor also stated that the offer was "revoked and [the prosecution would] not entertain any offer unless it's higher and it comes from the defendant." (<u>Id.</u> at 4.) A hearing was held on February 7, 2012, in which the state district court granted the defense motion to continue the trial and a request for further discovery. (ECF No. 16-34 at 3.) The trial was reset for April 22, 2013. (<u>Id.</u> at 5.)

A calendar call was held on April 16, 2013, and Frank Kocka appeared on Torres-Mejia's behalf, explaining that he "was retained by the family last week" but was unavailable for the trial the following week due to a conflict. (ECF No. 16-35 at 3.) The prosecutor stated that he would not agree to a continuance, and the state district court agreed, noting that "[w]e've gone through a lot of lawyers," and stating "I have continued this so many times. It needs to go." (<u>Id.</u> at 4.) Kocka explained that "[i]f [the trial] does go, the posture is I'm not gonna [sic] be able to try this because I'm starting a case on Monday also." (<u>Id.</u> at 5.) The state district court responded, "I understand. The thing is this case has been going for a long time. And it's nice that the family finally got you in on calendar call, but I have several attorneys. Mr. Eichorn is my contract attorney. He's a good attorney and this is gonna [sic] go." (<u>Id.</u>) Kocka replied, "[t]hat's fine." (<u>Id.</u>) The state district court

then indicated that it was sending the case to "overflow" because it had a murder trial scheduled the following week and that the trial "may not go. We'll see what happens in overflow." (Id.)

At a hearing held a few days later on April 19, 2013, by the "overflow" court to finalize the scheduling of the trial for the following week, Torres-Mejia stated that he did not want to go to trial. (ECF No. 16-36 at 4.) Eichorn then explained, "[h]e says he wants to accept a negotiation, but [the prosecutor] indicated to me that it expired." (Id. at 5.) The prosecutor confirmed that the offer had expired, explaining that he "had been extending that timeframe for almost a year" and was "not inclined to offer that" again. (Id.)

On the morning of trial, April 22, 2013, Eichorn stated that Torres-Mejia was "very upset" that Kocka "was not allowed to substitute into the case." (ECF No. 16-38 at 3.) Torres-Mejia addressed the state district court and explained that he "was willing to sign the deal" on April 16, 2013, at the calendar call. (Id. at 4.) The prosecutor stated that Kocka had approached the prosecution prior to the calendar call on April 16, 2013, but the prosecutor "made very clear there was no offer or negotiations." (Id.) The state district court told Torres-Mejia that "[t]here was no offer to accept last week" and "no offer to accept today." (Id. at 5.) After Torres-Mejia stated that he did not "want to go to trial," the state district court told him that he could "either plead straight up to all the charges or . . . go to trial." (Id.) Torres-Mejia responded, "[g]ive me the deal." (Id.) The state district court again informed Torres-Mejia that there was no deal available and he could not hire another attorney at that point, and Torres-Mejia stated he would plead guilty. (Id. at 5–7.) When the state district court asked Torres-Mejia if he was sure, Torres-Mejia responded, "[y]es. I don't have any other - - any other way out." (Id. at 7.) The state district court again told Torres-Mejia that he could go to trial, but Torres-Mejia stated that he had no support and there was "a lot of investigative work that wasn't done." (Id. at 8.) After being given his choices again of pleading

6

guilty or going to trial, Torres-Mejia confirmed that he "want[ed] to plead guilty." (<u>Id.</u>) Torres-Mejia signed an "advisement of rights and entry of plea" and pleaded guilty to two counts of trafficking a controlled substance following the state district court's canvass. (<u>Id.</u> at 11-21; ECF No. 16-37.) The state district court found that Torres-Mejia "ha[d] entered his plea freely and voluntarily." (ECF No. 16-38 at 21.)

On June 25, 2013, at Torres-Mejia's scheduled sentencing hearing, Eichorn indicated that Torres-Mejia "might have some interest in seeking to withdraw his plea." (ECF No. 16-39 at 3.) The state district court "appoint[ed] new counsel strictly for handing the motion" to withdraw the plea. (<u>Id.</u>) Monti Levy, who was appointed to represent Torres-Mejia, filed a motion to withdraw Torres-Mejia's guilty plea on November 8, 2013. (ECF No. 16-44.)

An evidentiary hearing was held on Torres-Mejia's motion on August 29, 2014. (ECF No. 17-5.) Kocka testified that he met with Torres-Mejia's family and "was retained to try and negotiate the case" "probably about a week" before his appearance on Torres-Mejia's behalf at the calendar call on April 16, 2013. (<u>Id.</u> at 5–8.) Prior to the calendar call, Kocka had discussions with the prosecutor, who told Kocka that he "would not be reoffering the negotiation." (<u>Id.</u> at 8.) Kocka testified that the prosecutor and he "go back a ways, and [he] had [the prosecutor] take that position before, and [Kocka's] position is usually there's always room for movement." (<u>Id.</u>) Kocka testified that he would have represented Torres-Mejia at trial if it were continued to another date due to the conflict he had with the current date and if "the family were to retain [him] with additional funds," but otherwise, he was just "retained to negotiate the case." (<u>Id.</u> at 11–12.) Kocka testified that it would have taken him "just two, three days maybe to prepare for the trial." (<u>Id.</u> at 14.) The state district court denied the motion to withdraw the guilty plea. (<u>Id.</u> at 72; <u>see also</u> ECF No. 17-10.)

The state district court sentenced Torres-Mejia to two concurrent sentences of 10 to 25 years. (ECF No. 17-6 at 7.) Torres-Mejia appealed his judgment of conviction, and the Nevada Supreme Court affirmed on October 17, 2015. (ECF No. 17-15.) Torres-Mejia sought post-conviction relief, which was denied by the state district court and affirmed by the Nevada Court of Appeals on February 13, 2018. (ECF No. 19-15.)

## II.     GOVERNING STANDARDS OF REVIEW

### A.     Antiterrorism and Effective Death Penalty Act ("AEDPA")

Section 2254(d) of Title 28 U.S.C. sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405–06 (2000), and citing Bell v. Cone, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

1  unreasonably applies that principle to the facts of the prisoner's case." Id. at 75 (quoting Williams,

2  529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be

3  more than incorrect or erroneous. The state court's application of clearly established law must be

4  objectively unreasonable." Id. (quoting Williams, 529 U.S. at 409–10) (internal citation omitted).

5          The Supreme Court has instructed that "[a] state court's determination that a claim lacks

6  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

7  correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing

8  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a

9  strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

10 at 102 (citing Lockyer, 538 U.S. at 75; see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011)

11 (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating

12 state-court rulings, which demands that state-court decisions be given the benefit of the doubt"

13 (internal quotation marks and citations omitted)).

14         **B.      Standard for effective-assistance-of-counsel claims**

15         In Strickland v. Washington, the Supreme Court propounded a two-prong test for analysis

16 of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the

17 attorney's "representation fell below an objective standard of reasonableness," and (2) that the

18 attorney's deficient performance prejudiced the defendant such that "there is a reasonable

19 probability that, but for counsel's unprofessional errors, the result of the proceeding would have

20 been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective

21 assistance of counsel must apply a "strong presumption that counsel's conduct falls within the

22 wide range of reasonable professional assistance." Id. at 689. The petitioner's burden is to show

23 "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed

the defendant by the Sixth Amendment." Id. at 687. Additionally, to establish prejudice under Strickland, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under Strickland, establishing that the decision was unreasonable is especially difficult. See Richter, 562 U.S. at 104–05. In Richter, the United States Supreme Court clarified that Strickland and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. Id. at 105; see also Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's Strickland determination under AEDPA, both AEDPA and Strickland's deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

## III.    DISCUSSION

### A.    Ground 1—counsel's failure to suppress evidence

In Ground 1, Torres-Mejia argues that counsel failed to move to suppress the evidence found in his vehicle in violation of the Sixth and Fourteenth Amendments. (ECF No. 15 at 9.) Specifically, Torres-Mejia contends that the officer's justifications for the search—probable cause and consent—lacked merit. (ECF No. 42 at 8.) Regarding the latter justification, Torres-Mejia explains that (1) he lacked the capacity to verbally consent to the search because he did not understand English, (2) he signed the written consent form without understanding it, and/or (3) he

involuntarily consented based on the circumstances where he was pulled over for a minor violation, was ordered out of his vehicle, and believed he had no choice but to consent to the search. (Id. at 10, 14–15.)

### 1.   Procedural default

Torres-Mejia previously acknowledged that this ground is unexhausted, but he contended that the claim was technically exhausted, and that he could demonstrate cause and prejudice to overcome the procedural default pursuant to Martinez v. Ryan, 566 U.S. 1 (2012). (See ECF No. 30 at 7.) The Court deferred consideration of this contention until this time. (See id.)

The principal issues before the Court, in context,[3] are: (1) whether Torres-Mejia's ineffective-assistance-of-counsel claim is substantial; (2) if so, whether Torres-Mejia's state post-conviction counsel was ineffective in raising this claim in the state district court; and (3) if so, whether, on the merits, Torres-Mejia was denied effective assistance of counsel. See, e.g., Atwood v. Ryan, 870 F.3d 1033, 1059–60 (9th Cir. 2017); Detrich v. Ryan, 740 F.3d 1237, 1243–46 (9th Cir. 2013). On all such issues, the Court's review is de novo. See Ramirez v. Ryan, 937 F.3d 1230, 1243 (9th Cir. 2019); Atwood, 870 F.3d at 1060 n.22.

### 2.   Relevant law

A search conducted without a warrant is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). Relevant here is the exception regarding "a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Where, as here, "the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and

---

[3]      The Court does not dwell over the additional contextual background requirements, as they are not disputed. See generally Rodney v. Filson, 916 F.3d 1254, 1259–60 (9th Cir. 2019).

Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." Id. 248. "Voluntariness is a question of fact to be determined from all the circumstances." Id. at 248–49. And "[i]n examining all the surrounding circumstances to determine if in fact the consent was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." Id. at 229.

The Court of Appeals for the Ninth Circuit has outlined five factors to assist in determining the voluntariness of a consent to search: "(1) whether [the consenting individual] was in custody; (2) whether the arresting officer had their guns drawn; (3) whether Miranda warnings were given; (4) whether the [consenting individual] was notified that she had a right not to consent; and (5) whether the [consenting individual] had been told a search warrant could be obtained." United States v. Brown, 563 F.3d 410, 415 (9th Cir. 2009). When reviewing these surrounding circumstances, there is no "mechanized formula to resolve the voluntariness inquiry," and no one factor is dispositive. United States v. Soriano, 361 F.3d 494, 502 (9th Cir. 2004). And when the circumstances specifically involve foreign nationals, a court must determine whether the consent was voluntary in light of any language barrier. United States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002) (explaining that "[i]n the case of a foreign national, the voluntariness inquiry also includes assessment of the following factors: (1) whether the defendant signed a written waiver; (2) whether he was read his rights in his native language; (3) whether he appeared to understand those rights; (4) whether he had the assistance of a translator; (5) whether his rights were explained painstakingly; and, (6) whether he had experience with the American criminal justice system").

Also, relevant here is the rule that officers may search a vehicle and any containers found therein without a warrant so long as they have probable cause to believe the vehicle contains

evidence of a crime. See, e.g., Wyoming v. Houghton, 526 U.S. 295, 300 (1999) (explaining that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched without a warrant where probable cause exists); California v. Acevedo, 500 U.S. 565, 580 (1991) (holding that "the police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained"); Carroll v. United States, 267 U.S. 132, 153–54 (1925) (holding that "contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant"). "Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175–76 (1949) (citing Carroll, 267 U.S. at 162).

### 3.    Analysis

In assessing the voluntariness factors for consenting to a search, it is clear that Torres-Mejia was not in formal custody at the time he gave consent, the officers did not have their weapons drawn, Miranda warnings were not required, and the officers did not tell Torres-Mejia that they could obtain a search warrant if he refused to consent. Importantly, however, these factors, which weigh in favor of voluntariness, are eclipsed by the lack of voluntariness exhibited by Torres-Mejia's language barrier.

Although the general consent form was provided to Torres-Mejia in Spanish, the essential part of the search—the canine search—was only communicated to Torres-Mejia verbally in English. The record demonstrates that the officer was acutely aware of Torres-Mejia's language barrier from his Mexican driver's license, lack of ability to readily communicate in English, and the fact that he read the consent form in Spanish. Rather than attempting to meticulously

communicate Torres-Mejia's constitutional rights in a manner that he would comprehend, however, the officer appeared to exploit Torres-Mejia's vulnerability stemming from his language barrier. The officer called for a backup officer who arrived during the first officer's records check, ordered Torres-Mejia out of his vehicle, and directed Torres-Mejia to walk to the officer's vehicle. These coercive actions would not lead a reasonable person to feel that he or she was free to ignore the police presence and go about his or her business. It was during this informal restraint that the officer asked Torres-Mejia for consent to search his vehicle. And it was only after Torres-Mejia read and signed the Spanish version of the consent form that the officer informed Torres-Mejia about the "narcotics detector dog." (ECF No. 16-2 at 2.)

The Court is cognizant of the fact that "[f]ailure to object to the continuation of a vehicle search after giving general consent to search 'is properly considered as an indication that the search was within the scope of the initial consent.'" United States v. Cannon, 29 F.3d 472, 477 (9th Cir. 1994) (quoting United States v. Sierra-Hernandez, 581 F.2d 760, 764 (9th Cir. 1978)). That said, because there is (1) no indication that the officer was able to communicate the meaning of a canine search in Spanish or (2) that Torres-Mejia understood sufficient English to understand the meaning of a canine search, Torres-Mejia's lack of an objection to the canine search cannot be considered an indication that the canine search was included in Torres-Mejia's initial consent. See United States v. Castrillon, 716 F.2d 1279, 1282–84 (9th Cir. 1983) (considering whether a suspect fully understood an officer's questions as a relevant factor in considering the validity of a suspect's consent). As such, based on this record and under the totality of the circumstances, especially the lack of a proper translation regarding the canine search, the Court finds that at least a portion of the search—namely, the canine search—was either not sufficiently consented to or such consent was involuntary.

Notwithstanding this finding, the Court finds that the officer had probable cause to search the vehicle. At the preliminary hearing, the officer testified, inter alia, that (1) he "could spell [sic] an odor coming from the vehicle," (2) based on his "training and experience, [he] recognized the odor to be that of heroin," and (3) that training and experience included "12 years of being a police officer," making "numerous arrests with heroin," the fact that he had been around heroin and other narcotics "over 16 hours a month for the last four years" training his "narcotics canine dog," and he was familiar with the "vinegary pungent odor" of heroin. (ECF No. 16-9 at 5.) Because the officer was familiar with the odor of heroin and smelled such an order coming from Torres-Mejia's vehicle, he had sufficient probable cause to search the vehicle. See Johnson v. United States, 333 U.S. 10, 13 (1948); see also United States v. Barron, 472 F.2d 1215, 1217 (9th Cir. 1973) (explaining that "the fact that an agent familiar with the odor of marijuana, smelled such an odor emanating from the automobile when he jumped in to stop it, alone was sufficient to constitute probable cause for a subsequent search for marijuana").

Consequently, because a motion arguing for the suppression of the controlled substances found during that search would not have been meritorious due to the officer's probable cause to search, Torres-Mejia fails to demonstrate that counsel was deficient. Strickland, 466 U.S. at 688; Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1170 (9th Cir. 2003) (explaining that a "petitioner must show that . . . the overlooked motion to suppress would have been meritorious"). Accordingly, Ground 1 is not substantial for purposes of Martinez, is procedurally defaulted, and is dismissed.

**B.      Ground 2—counsel of choice**

In Ground 2, Torres-Mejia argues that the state district court violated his Sixth Amendment right to counsel of choice when it would not allow Kocka to substitute in as his attorney because doing so would have required a continuance. (ECF No. 15 at 10.)

1              1.       **Relevant law**

2          The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall

3    enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

4    "[A]n element of this right is the right of a defendant who does not require appointed counsel to

5    choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006).

6    While "[a] choice-of-counsel violation occurs whenever the defendant's choice is wrongfully

7    denied," this right can be limited by "a trial court's wide latitude in balancing the right to counsel

8    of choice against the needs of fairness and against the demands of its calendar." Id. at 150, 152

9    (emphasis in original) (internal quotation marks omitted); see Wheat v. United States, 486 U.S.

10   153, 164 (1988) ("[W]e hold that the District Court's refusal to permit the substitution of counsel

11   in this case was within its discretion and did not violate petitioner's Sixth Amendment rights.").

12   Indeed, "broad discretion must be granted trial courts on matters of continuances; only an

13   unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for

14   delay' violates the right to the assistance of counsel." Morris v. Slappy, 461 U.S. 1, 11–12 (1983)

15   (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)); see also United States v. Garrett, 179 F.3d

16   1143, 1147 (9th Cir. 1999) ("When a motion for a continuance arguably implicates a defendant's

17   Sixth Amendment right to counsel, the court must consider the effect of its decision on this

18   fundamental right."); United States v. Thompson, 587 F.3d 1165, 1174 (9th Cir. 2009) (listing

19   factors to be balanced when a decision to grant or deny a continuance implicates a defendant's

20   Sixth Amendment right to counsel, including "[1] whether the continuance would inconvenience

21   witnesses, the court, counsel, or the parties; [2] whether other continuances have been granted; [3]

22   whether legitimate reasons exist for the delay; [4] whether the delay is the defendant's fault; and

23   [5] whether a denial would prejudice the defendant").

### 2.   State court determination

In affirming Torres-Mejia's judgment of conviction, the Nevada Supreme Court held:

> Appellant Victor Torres-Mejia argues that the district court violated his Sixth Amendment right to counsel of choice when it refused to grant a continuance at calendar call so that Torres-Mejia could substitute retained counsel in place of appointed counsel. We disagree.
>
> While a defendant has a right to counsel of his choice under the Sixth Amendment, this right must be balanced against the needs of fairness and demands of the court's calendar. United States v. Gonzalez-Lopez, 548 U.S. 140, 152 (2006); Patterson v. State, 129 Nev., Adv. Op. 17, 298 P.3d 433, 438 (2013). The district court has discretion to deny a request for substitution of retained counsel when the substitution "'was untimely and would result in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.'" Patterson, 129 Nev., Adv. Op. 17, 298 P.3d at 438 (quoting People v. Lara, 103 Cal. Rptr. 2d 201, 211-12 (Cal. Ct. App. 2001) (internal quotation marks omitted)). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (quoting Ungar v. Sarafite, 376 U.S 575, 589 (1964)).
>
> Here, Torres-Mejia informed the district court a week before trial that he had retained private counsel who would not be available to represent him on the scheduled trial date. The district court briefly discussed the possibility of substitution and a continuance but, citing the lengthy delay that had already taken place and the fact that Torres-Mejia had already been represented by three different attorneys, refused to continue the trial. The record supports the district court's decision, as the trial had been continued on multiple occasions at the defense's request and Torres-Mejia had ample time to retain private counsel during the 17-month period between the date he was charged and the date of trial.
>
> > [FN1] The district court had informed Torres-Mejia months earlier, after he expressed dissatisfaction with appointed counsel, that he could retain private counsel at his own expense, but he did not do so until shortly before trial.
>
> Further, we conclude that the district court's inquiry was adequate under the circumstances, see Patterson, 129 Nev., Adv. Op. 17, 298 P.3d at 438-39, and the district court did not abuse its discretion in this regard, see Morris, 461 U.S. at 11-12.

(ECF No. 17-15 at 2–3.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

### 3.   Analysis

Although the state district court has wide latitude in matters of continuances, when the request for a continuance implicates a defendant's Sixth Amendment right to counsel, federal law requires the trial court to balance the defendant's right to counsel of choice against other equitable factors. Here, the state district court failed to conduct any type of balancing when it refused to grant a continuance of the trial date so that Kocka, who had recently been retained by Torres-Mejia and was unavailable for the current trial setting, could represent Torres-Mejia. Indeed, it does not appear on the record that the state district court considered Torres-Mejia's right to counsel of his choice, whether Torres-Mejia had legitimate reasons for the delay in hiring Kocka, any inconvenience to witnesses that would occur from a continuance, or prejudice that Torres-Mejia would suffer. Instead, the state district court only considered (1) the timing of the request in relation to the trial date even though the state district court had previously told Torres-Mejia that he could substitute retained counsel "any time," (2) the previous continuances given without considering the basis for those continuances or who requested those continuances,[4] and (3) Torres-Mejia's prior representation by Ericsson, Immerman, and Eichorn without taking into consideration that Kocka had already been retained by Torres-Mejia and was physically present at the calendar call. See, e.g., United States v. Nguyen, 262 F.3d 998, 1003 (9th Cir. 2001) (finding that the district court abused its discretion in denying a reasonable continuance for substitute counsel because the district court judge failed to make findings on the record, denied the request without a hearing, and gave improper reasons for denying the request); see also United States v. Moore, 159 F.3d 1154, 1160 (9th Cir. 1998) (criticizing a trial judge who seemed "above all to be determined not to disturb

---

[4]     One continuance was based on Ericsson's conflict, one continuance was based on the state district court's conflict, one continuance was for the parties to explore negotiations, and one continuance was based on the defense's request for further discovery.

[the court's] trial schedule"); cf. Dixon v. Ryan, 932 F.3d 789, 806 (9th Cir. 2019) ("The trial court referenced the overall length of the case and weighed the timely resolution of the case, among other factors, so the denial was not an 'unreasoning' or 'arbitrary insistence' on an expeditious resolution of the case."); Houston v. Schomig, 533 F.3d 1076, 1079 (9th Cir. 2008) ("The record supports the state court's conclusion that the trial judge acted within his broad discretion in denying Houston's motion for a continuance to retain counsel [which was sought just four days before trial was scheduled to begin]. Specifically, he confirmed that counsel was able to proceed to trial, evaluated Houston's diligence in timely retaining private counsel, and weighed the potential impact a continuance may have on the victims and witnesses.").

Consequently, based on the circumstances present in this case, especially the state district court's lack of adequate—or any—consideration to Torres-Mejia's Sixth Amendment rights, the state district court's decision to refuse a continuance of the trial date to allow Kocka to represent Torres-Mejia amounted to an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." Morris, 461 U.S. at 11–12. Accordingly, the Nevada Supreme Court's rejection of this claim amounted to an unreasonable application of clearly established federal law. Accordingly, Torres-Mejia is entitled to federal habeas relief for Ground 2.[5]

### C.    Ground 3—guilty plea was not knowingly, voluntarily, or intelligently made

In Ground 3, Torres-Mejia argues that his guilty plea was not knowingly, voluntarily, or intelligently made in violation of the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 15 at

---

[5]    As a practical matter, it may be redundant to discuss Grounds 3 and 4 of the petition given that the Court has already concluded that Torres-Mejia is entitled to federal habeas relief. In an abundance of caution, however, the Court discusses them as follows.

12.) Specifically, Torres-Mejia contends that he lacked basic understanding of criminal law and procedure to make an intelligent plea. (ECF No. 42 at 23.)

### 1. Relevant law

The federal constitutional guarantee of due process of law requires that a guilty plea be knowing, intelligent, and voluntary. See Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). "The voluntariness of [a petitioner's] plea can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749. Addressing the "standard as to the voluntariness of guilty pleas," the Supreme Court has stated: a "plea of guilty entered by one fully aware of the direct consequences . . . must stand unless induced by threats . . . , misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." Id. at 755; see also North Carolina v. Alford, 400 U.S. 25, 31 (1970) (noting that the longstanding "test for determining the validity of guilty pleas" is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

### 2. State court determination

In affirming Torres-Mejia's judgment of conviction, the Nevada Supreme Court held:

> Torres-Mejia also argues that he was forced to enter into a guilty plea based on the deprivation of his right to counsel of choice and that the district court should have allowed him to withdraw his guilty plea on this basis. Because we conclude that Torres-Mejia was not deprived of his Sixth Amendment right to counsel of choice, Torres-Mejia's challenge to the validity of his guilty plea necessarily fails.

(ECF No. 17-15 at 3–4.)[6]

---

[6] Torres-Mejia argues that this Court should review this ground de novo because the Nevada Supreme Court conflated his right of counsel claim with his guilty plea claim. (ECF No. 42 at 23.) This Court disagrees. The Nevada Supreme Court did not conflate the two claims; rather, Torres-Mejia presented these two overlapping claims in a single

### 3.     Analysis

It is true, as Torres-Mejia notes, that he exhibited confusion at the change of plea hearing: he asked to take the plea offer even though he was repeatedly told it had expired; he asked "what time [he would] be facing" if he pleaded guilty; he wrongly indicated that the only sentence he would face if he went to trial was a life sentence; he stated that he had no "other way out" other than pleading guilty even though he was repeatedly told he could go to trial; he stated that he would go to trial if he could get an attorney even though Eichorn was present and prepared for trial; he expressed confusion about what it meant for the state district court to accept his plea and the difference between concurrent and consecutive sentences; and he answered incorrectly that he understood the English language.

To combat these incidents of confusion, however, Eichorn had several discussions with Torres-Mejia during the hearing where he addressed Torres-Mejia's questions, Eichorn and Torres-Mejia discussed his plea while the prosecutor prepared the advisement of rights and entry of plea agreement, the interpreter read the agreement to Torres-Mejia, Torres-Mejia signed the agreement, Torres-Mejia stated that he understood the agreement and had no questions, and Torres-Mejia confirmed on at least three occasions that he wanted to plead guilty. Further, Torres-Mejia confirmed that his guilty plea was freely and voluntarily given during his thorough canvass by the state district court. The state district court also made specific findings that Torres-Mejia's plea was freely and voluntarily made. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) (stating that the defendant's representations, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," and that "[s]olemn

---

ground for relief: "the district court erred in denying the motion to withdraw guilty plea based upon the violation of Mr. Torres-Mejia's Sixth Amendment right to retained counsel of his choice." (ECF No. 17-11 at 31.)

1 declarations in open court carry a strong presumption of verity"); see also Muth v. Fondren, 676

2 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea colloquy carry a strong

3 presumption of truth."). Finally, at the end of the hearing, the state district court asked if Torres-

4 Mejia had any questions, and he answered, "[n]o. Everything's fine."

5     After "considering all of the relevant circumstances surrounding" Torres-Mejia's plea,

6 Brady, 397 U.S. at 748–49, Torres-Mejia fails to demonstrate that his guilty plea was not entered

7 into knowingly, intelligently, and voluntarily. Accordingly, the Nevada Supreme Court's rejection

8 of this claim was neither contrary to, nor an unreasonable application of, clearly established federal

9 law and was not based on an unreasonable determination of the facts. Torres-Mejia is thus not

10 entitled to federal habeas relief for Ground 3.

11     **D.**     **Ground 4—counsel's failure to convey plea offer expiration**

12     In Ground 4, Torres-Mejia argues that counsel failed to convey to him that the plea offer

13 had an expiration date in violation of the Sixth and Fourteenth Amendments. (ECF No. 15 at 14.)[7]

14     **1.**     **State court determination**

15     In affirming the denial of Torres-Mejia's state post-conviction petition, the Nevada Court

16 of Appeals held:

17         Torres-Mejia contends the district court erred by denying his claims that
counsel was ineffective in the plea bargaining process. To demonstrate ineffective

18         assistance of counsel sufficient to invalidate a judgment of conviction based on a
guilty plea, a petitioner must show counsel's performance was deficient in that it

19         fell below an objective standard of reasonableness and prejudice resulted in that
there was a reasonable probability of a different outcome absent counsel's errors.

20

21 [7]    For the first time in his reply brief, Torres-Mejia also argues that Eichorn failed to adequately convey the
offer to him, contending that Eichorn told him that he needed to cooperate with law enforcement as part of the plea

22 bargain and failed to inform him that he would receive credit for time served. (ECF No. 42 at 32.) Torres-Mejia
supports this claim by citing to the letter he wrote to the state district court on November 20, 2012, in which he
explained that Eichorn "told [his] family members that if [he] didn't cooperate with the police he was going to leave

23 [him] there all [his] life and that the time that [he had] been here does not count." (ECF No. 16-30 at 2.) The Court
need not consider this argument raised for the first time in Torres-Mejia's reply brief. See Zamani v. Carnes, 491 F.3d
990, 997 (9th Cir. 2007). Still, even if the Court were to consider it, it would fail for the same reasons discussed in
this ground.

*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); <u>Warden v. Lyons</u>, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Both components of the inquiry must be shown. <u>Strickland</u>, 466 U.S. at 697.

First, Torres-Mejia argued counsel failed to advise him as to the expiration of the State's guilty-plea offer. Torres-Mejia failed to demonstrate deficiency or that he was prejudiced. Torres-Mejia was present with an interpreter at the November 8, 2012, hearing when the prosecutor stated on the record the outstanding guilty-plea offer would expire on November 27, 2012. Torres-Mejia contends this was not a firm expiration date for several reasons.

He first argues the State had previously extended offer deadlines, so there was no reason for him to believe November 27 was a firm expiration date. However, the State's prior actions are irrelevant to counsel's effectiveness where, as here, Torres-Mejia has not alleged counsel told him a different expiration date. He next argues the prosecutor's comment at a December 20, 2012, hearing that the offer was "now" revoked indicated the deadline was not in November. However, the prosecutor's comment simply indicated the offer was not available at the December hearing, not that it expired effective that date. Finally, Torres-Mejia points to a prosecutor's April 22, 2013, statement to the district court that a plea offer had expired on February 7, 2013, as evidence that the plea negotiations were ongoing at the December hearing. However, this statement was made by a prosecutor who was appearing for the first time in Torres-Mejia's case and who was not in charge of negotiating his case. Rather, at the April 19, 2013, hearing, the prosecutor who was in charge of negotiating the case stated he had put a deadline on the plea offer the prior October and was not inclined to extend it any further.

Not only has Torres-Mejia failed to demonstrate the deadline was not in November 2012, but he also acknowledged the November deadline in his supplemental petition. Torres-Mejia thus failed to demonstrate counsel was objectively unreasonable or a reasonable probability of a different outcome had counsel acted differently. We therefore conclude the district court did not err by denying this claim.

(ECF No. 19-15 at 2–3.)[8]

*///*

---

[8] Torres-Mejia argues that this Court should review this ground <u>de novo</u> because the Nevada Court of Appeals' decision was based on an unreasonable determination of the facts because an interpreter was not present at the November 8, 2012, hearing, and there is no record that he was either. (ECF No. 42 at 30.) It is true that the transcript of the November 8, 2012, hearing does not mention the presence of Torres-Mejia or an interpreter. (<u>See</u> ECF No. 16-29.) However, the state district court minutes from the November 8, 2012, hearing demonstrate that Torres-Mejia and a Spanish interpreter, Ricardo Pico, were present. (ECF No. 16-12 at 12.) Accordingly, it does not appear that the Nevada Court of Appeals' decision was based on an unreasonable determination of the facts. Even if the Court were to review this ground <u>de novo</u> on this basis, however, Torres-Mejia fails to demonstrate prejudice for the reasons discussed below.

2.      **Analysis**

"[D]efense counsel has the duty to communicate formal offers from the prosecution." See Missouri v. Frye, 566 U.S. 134, 145 (2012) (explaining that "[w]hen defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires"). Torres-Mejia fails to demonstrate that counsel failed to meet this duty by informing him of the expiration of the plea deal. As the Nevada Court of Appeals reasonably noted, Torres-Mejia was present at the hearing on November 8, 2012, when the prosecutor stated that the plea offer would expire in two weeks. And Eichorn indicated to the state district court at the next hearing on December 20, 2012, that he met with Torres-Mejia and discussed the offer and expiration date. Therefore, Torres-Mejia's argument that he was not informed about the expiration of the offer is belied by the record and supported only by his own self-serving statements.[9] See, e.g., Womack v. Del Papa, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting a petitioner's claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence" to support his allegations); Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002) (explaining that the petitioner's "self-serving statement, made years later," was insufficient to support the petitioner's claim).

Further, Torres-Mejia fails to demonstrate a reasonable probability that he would have accepted the plea offer before it expired had Eichorn allegedly not failed to relay the expiration date. Frye, 566 U.S. at 147 ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been

---

[9]     Torres-Mejia submitted a "memorandum" to the state district court on November 1, 2013, almost a year after the expiration of the offer, in which he stated, inter alia, that "no attornies [sic] explained to me about 'plea offers' and the timeliness of them. I was never told about 'offers' and expiration of offers. I didn't know that certain decisions had to be made within a certain time period." (ECF No. 16-43 at 5.)

afforded effective assistance of counsel."); <u>see also</u> <u>Lafler v. Cooper</u>, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). It appears from the record that there was a plea offer available from at least February 13, 2012, when Ericsson moved to withdraw as counsel, until mid-to-late November 2012, when the plea offer expired. During that time, Torres-Mejia steadfastly refused to accept the original plea offer relayed to Ericsson and the "more favorable" plea offer relayed to Immerman and Eichorn. Further, before the plea offer was set to expire, Torres-Mejia wrote a letter calling the offer "unfair," and it was not until April 19, 2013, three days before the start of trial and five months after the plea offer expired, that Torres-Mejia changed his mind and indicated he wanted to accept the offer. Thus, it appears that the catalyst for Torres-Mejia agreeing to the plea offer was the looming trial, a motivation that was not present at the time of the offer's expiration.

Therefore, the Nevada Court of Appeals' determination that Torres-Mejia failed to demonstrate that counsel's performance was deficient and resulting prejudice constitutes an objectively reasonable application of <u>Strickland</u>'s performance and prejudice prongs. 466 U.S. at 688, 694. Consequently, Torres-Mejia is not entitled to federal habeas relief for Ground 4.

## IV.   CONCLUSION[10]

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 15) is **GRANTED** as to Ground 2. Petitioner Victor Torres-Mejia's judgment of conviction filed on November 7, 2014, in case number C276926-1, in the Eighth Judicial District Court for the State of Nevada is **VACATED**. Within 120 days[11] of the later of (1)

---

[10]    Torres-Mejia requests that the Court conduct an evidentiary hearing. (ECF No. 15 at 16.) The Court declines to do so because it is able to decide the petition on the pleadings.

[11]    Reasonable requests for modification of this time may be made by either party.

the conclusion of any proceedings seeking appellate or certiorari review of this Court's judgment, if affirmed, or (2) the expiration for seeking such appeal or review, Torres-Mejia shall be released from all custody and/or other restraints, including parole or other supervision, unless the state files a written election in this matter of its intention to try Torres-Mejia and thereafter commences jury selection.

**IT IS FURTHER ORDERED** that, to the extent necessary, a certificate of appealability is **DENIED** for Grounds 1, 3, and 4.

**IT IS FURTHER ORDERED** that the Clerk of the Court (1) enter judgment accordingly, (2) provide a copy of this order and the judgment to the Clerk of the Eighth Judicial District Court for the State of Nevada in connection with that court's case number C276926-1, and (3) close this case.

**Dated:** August 24, 2023

RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE